IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FLEETWOOD FINANCIAL, A DIVISION
OF IDB LEASING, INC.,

       Plaintiff,

v.                                                                           No. 07-2307

MEMPHIS ORTHOPAEDIC GROUP, P.C.,

       Defendant/Third-Party Plaintiff,

v.

DICTAPHONE CORPORATION,

       Third-Party Defendant.

_____

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REFERRING ISSUE OF DAMAGES TO THE MAGISTRATE JUDGE FOR
A REPORT AND RECOMMENDATION
_____

       Plaintiff, Fleetwood Financial ("Fleetwood"), filed the instant breach of contract suit against Defendant, Memphis Orthopaedic Group, P.C. ("MOG") on February 21, 2007, in the Circuit Court of Tennessee for the Thirtieth Judicial District. MOG subsequently filed a Third Party Complaint against Dictaphone Corporation ("Dictaphone"), which removed this action to federal court. Pending before the Court is Fleetwood's Motion for Summary Judgment. (Doc. No. 4.) The Defendant has responded and this motion is now ripe for disposition. For the following reasons, the motion is GRANTED and the issue of damages is hereby referred to the United States Magistrate Judge for a report and recommendation.

BACKGROUND

MOG is a professional medical practice that specializes in orthopedic medicine. (Doc. No. 1 Attach. 2, Am. Compl. ¶ 6.) On August 5, 1998, MOG entered into a corporate leasing agreement ("Master Lease") with Fleetwood for the purpose of financing certain medical equipment. (Id. ¶¶ 7-8.) MOG allegedly stopped making payments on one of its leases on May 1, 2006, prompting Fleetwood to file the instant action. (Id. ¶ 18.) In its Answer, MOG claims that Fleetwood materially breached the terms of the agreement between them. (Doc. No. 1 Attach. 2, Answer at 4.) In addition, MOG filed a third-party complaint against Dictaphone, the manufacturer of the equipment leased by Fleetwood to MOG, claiming that the equipment "did not perform in the manner as represented by Dictaphone . . . ." (Id. at 8.)

According to the Master Lease between Fleetwood and MOG, Fleetwood agreed to lease MOG certain equipment that MOG directed it to purchase and deliver. (Doc. No. 4 Ex. A ¶¶ 1-2.) The equipment, as well as additional terms and conditions of the lease, including the amount of rent to be paid, were to be described in Schedules attached to the Master Lease. (Id. ¶ 1.) The Master Lease specifically provided that Fleetwood, "neither being the manufacturer or a dealer in the equipments" issued no "representations or warranties of any kind." (Id. ¶ 3.) Furthermore, the agreement stated that if the equipment is not "properly installed, does not operate as represented or warranted by [the] Seller or manufacturer [of the equipment] or is unsatisfactory for any reason, [MOG] shall make any claim on account thereof solely against the Seller or manufacturer and shall nevertheless pay [Fleetwood] all rent payable under this Lease." (Id.)

In the event of a default by MOG, the Master Lease provided Fleetwood with the right to

> declare the entire amount of unpaid rentals for the balance of the term of *any* Schedule hereto immediately due and payable, whereupon [MOG] shall become

2

> obligated to pay to [Fleetwood] forthwith the present value of the remaining unpaid rentals of the full term of *each* Schedule plus the value of [Fleetwood's] anticipated residual recovery discounted to the date of default at six percent per annum plus interest thereon at eighteen percent per annum from the date of default to the date of payment, but in no event more than the maximum rate permitted by law . . . .

(Id. ¶ 13 (emphasis added).) In addition, "[w]herever any payment is not made by [MOG] when due hereunder, [MOG] agrees to pay [Fleetwood] (as an administrative charge, to offset [Fleetwood's] collection expense occasioned by such delay) . . . an amount calculated at the rate of ten cents per one dollar of each such delayed payment . . ." (Id.) Fleetwood is also entitled to seek reasonable attorneys' fees and any expenses incurred in connection with the enforcement of its remedies. (Id.) The Master Lease states that if MOG defaults "in the payment of any rental or in making any other payment under any Schedule hereto when due . . . ," Fleetwood can consider MOG to be in default. (Id. ¶ 12.)

Master Lease Schedule No. 5 ("Schedule No. 5") was executed by the parties on May 31, 2002. (Doc. No. 4 Ex. B.) Under its provisions, Fleetwood was to lease MOG certain equipment for a term of sixty months at $13,565.25 per month. (Id. at 1.) The Plaintiff alleges that MOG has failed to make these monthly payments since May 1, 2006. (Doc. No. 4, Pl.'s Mem. in Supp. Mot. Summ. J., Statement of Undisputed Facts ¶ 6.) According to MOG, the last payment it made was on March 20, 2006, six weeks earlier than Fleetwood claims. (Doc. No. 16 Attach. 2, Aff. of Dan Hein ¶ 3.) The parties also executed Schedule No. 6 on September 12, 2002. (Doc. No. 4 Ex. C.) It provides that MOG would lease from Fleetwood certain equipment for sixty months at $150.01 per month. (Id. at 1.) The Plaintiff acknowledges that MOG has not defaulted on those payments. (Doc. No. 23, Pl.'s Reply, at 7 n.2.)

Fleetwood contends that the present value of the payments due under Schedule No. 5 is $208,089.92. (Doc. No. 4, Pl.'s Mem. in Supp. Mot. Summ. J., Statement of Undisputed Facts ¶ 11.) In addition, it claims that late fees of $17,784.04 and interest in the amount of $50,715.04 are due. (Id. ¶¶ 12-13.) Furthermore, the residual value under Schedule No. 5 is $69,805.51 and taxes of $30,396.51 are owing. (Id. ¶¶ 14-15.) Last, Fleetwood maintains that $2,921.14 is due under Schedule No. 6. (Id. ¶ 17.) MOG's Business Manager asserts that he has reviewed Fleetwood's Executive Vice President's affidavit and cannot determine the accuracy of the amounts Fleetwood claims. (Doc. No. 16 Attach. 2, Aff. of Dan Hein ¶ 5.)

In its motion for summary judgment, Fleetwood argues that MOG is in default of the Master Lease and thus it owes the full amounts listed above. (Doc. No. 4, Pl.'s Mem. in Supp. Mot. Summ. J., at 7-9.) In response, the Defendant insists that because there is no proof in the record as to how Fleetwood arrived at these sums, summary judgment is not appropriate. (Doc. No. 16, Def.'s Mem. in Opp., at 8.) MOG further contends that the "ten cents for every dollar" charge, the default interest rate of eighteen percent, and the residual value claim are unreasonable late charges under New Jersey law. (Id.)

## STANDARD OF REVIEW

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.

4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

A. CHOICE OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship of the parties, and therefore applies state, rather than federal, law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In this case, the contract between the parties has a choice-of-law provision which directs that it shall be governed by New Jersey law. (Doc. No. 4 Ex. A ¶ 18.) However, the Plaintiff applies Tennessee law in analyzing MOG's obligations

5

under the Master Lease and accompanying Schedules. (Doc. No. 4, Pl.'s Mem. in Supp. Mot. Summ. J., at 7.) The Defendant applies New Jersey law. (Doc. No. 16, Def.'s Mem. in Opp., at 6.)

The Tennessee conflict of law rule provides that contracts are presumed to be governed by the laws of the jurisdiction in which they are executed unless the parties manifest a contrary intent. Messer Griesheim Indus., Inc., v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 474-75 (Tenn. Ct. App. 2003) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)). When parties include a choice-of-law provision in their contract, it will be honored if certain requirements are met. Id. at 475.

> The choice of law provision must be executed in good faith. The jurisdiction whose law is chosen must bear a material connection to the transaction. The basis for the choice of another jurisdiction's law must be reasonable and not merely a sham or subterfuge. Finally, the parties' choice of another jurisdiction's law must not be "contrary to 'a fundamental policy' of a state having [a] 'materially greater interest' and whose law would otherwise govern."

Id. (internal citations omitted).

In this case, New Jersey bears a reasonable and material relation to the transaction because Fleetwood's principal place of business is in New Jersey. (Doc. No. 1 Attach. 2, Am. Compl. ¶ 1.) There is no evidence in the record to suggest that the choice of New Jersey law is a sham or subterfuge or is in bad faith. Last, the application of New Jersey law in this case is not contrary to any fundamental policy of Tennessee because relevant New Jersey and Tennessee law on the interpretation of contracts appears to be substantially similar. See e.g., Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002) (stating that, under Tennessee law, courts resolving contract disputes must give effect to the intent of contracting parties at the time of the execution of the agreement) (citation omitted); State Troopers Fraternal

Assoc. v. State, 692 A.2d 519, 523 (N.J. 1997) ("[F]undamental canons of contract construction require that we examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances.") (citations omitted); Verhagen v. Platt, 61 A.2d 892, 893 (N.J. 1948) ("The function of the Court is to ascertain and give effect to the intention of the parties as of the time the contract was made.") (citations omitted). Thus, this Court holds that the choice-of-law provision is valid and applies New Jersey law.

B.  MOG'S OBLIGATIONS UNDER THE CONTRACT

In interpreting a contract, New Jersey law dictates that courts "enforce contracts as the parties intended." Pacifico v. Pacifico, 920 A.2d 73, 77 (N.J. 2007) (citation omitted). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Id. (quoting Atl. N. Airlines, Inc. v. Schwimmer, 96 A.2d 652, 656 (N.J. 1953)).

In this case, the Defendant does not dispute that it defaulted under the lease agreement. Rather, MOG asserts that there are factual disputes as to 1) the commencement date for Schedule No. 5; 2) whether Fleetwood credited MOG for payment of the first and last monthly rental payments; and 3) the number of unpaid monthly rental payments which form the basis for the late fees, interest, and residual value claim. In addition, the Defendant argues that certain damage provisions in the Master Lease are unenforceable under New Jersey law. Because MOG does not dispute its underlying liability, the Court holds that it is in default of its lease agreement and will proceed to examine in turn each of its arguments challenging the amounts calculated by the Plaintiff.

1.  The Commencement Date for Schedule No. 5

Identifying the commencement date of the lease is crucial to determining how much Fleetwood is owed. MOG contends that the commencement date for Schedule No. 5 cannot be determined because its Business Manager, Dan Hein, "cannot locate any documents" that would

allow him to determine what that date is.  (Doc. No. 16 Attach. 2, Aff. of Dan Hein ¶ 4.)

However, Fleetwood has provided sufficient documentation for the Court to conclude that the

commencement date for Schedule No. 5 was October 1, 2002.

The Master Lease states that the commencement date is the "date that any of the

Equipment is delivered to [MOG] or [MOG's] agent or cosigned to a carrier for shipment to

[MOG] or [MOG's] agent . . . ."  (Doc. No. 4 Ex. A ¶ 1.)  Fleetwood has presented a "Delivery

and Acceptance Receipt" for Schedule No. 5, signed by Robert Dohogne, MOG's Administrator,

that confirms that MOG took delivery of the equipment on October 1, 2002.  (Doc. No. 23 Ex.

A.)  In addition, the Plaintiff has submitted a copy of an "Equipment Verification Sheet," which

its employees use to document communications with lessees, that notes that an unidentified

Fleetwood employee spoke with Robert Dohogne on September 23 and was told that the lease

would begin October 1, 2002.  (Id. Ex. B ("9/23 - Commence as of 10/1/02. Due on 1st.").)

Because the Defendant has not made any showing that rebuts Fleetwood's evidence, other than

submitting Hein's statement that he personally can find no documents that establish the lease's

beginning date, the Court finds that there is no material issue of fact as to Schedule No. 5's

commencement date.

        2.        The Number of Outstanding Rental Payments and Whether Fleetwood Credited MOG for the First and Last Months' Payments

MOG argues that summary judgment cannot be granted because it is not certain whether

Fleetwood has credited it with paying the first and last months' rent.  Schedule No. 5 provides

for a lease term of sixty months, with a payment of $13,565.25 due at the beginning of each

month.  (Doc. No. 4 Ex. B at 1.)  In addition, Schedule No. 5 states that MOG must pay the first

and last months' rent, a total of $27,130.50, at the time the lease is signed.  (Id.)  The sixty

month lease would have expired on October 1, 2007.  Fleetwood's reply makes it clear that it did

credit MOG for those payments.  (Doc. No. 23, Pl.'s Reply, at 7.)  According to Fleetwood,

MOG ceased making payments on May 1, 2006, which means that a total of fifteen payments are

8

outstanding, not including the final payment, which has already been made.[1]

        3.      Whether the residual value claim plus eighteen percent interest and late fees are unreasonable late charges under New Jersey law

Upon MOG's default, Fleetwood invoked paragraph 13 of the Master Lease, which provides that MOG must pay 1) the present value of the remaining payments under any schedule, 2) the anticipated residual recovery value of the equipment discounted to the date of default at 6% per annum plus 18% interest per annum thereon from the date of default to the date of payment, 3) attorneys' fees and expenses, and 4) late fees assessed at the rate of 10 cents per dollar of each delayed rental payment. In addition, paragraph 5 of the Master Lease requires that MOG pay all taxes associated with the use, ownership, and possession of the equipment. MOG argues that the provisions pertaining to late fees, interest, and residual value charges are unenforceable under New Jersey law. (Doc. No. 16, Def.'s Mem. in Opp., at 9.)

The New Jersey Supreme Court has adopted the Second Restatement of Contracts' approach to liquidated damages, according to which

> [d]amages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

MetLife Capital Fin. Corp. v. Washington Ave. Assocs., 732 A.2d 493, 499 (N.J. 1999) (quoting Restatement (Second) of Contracts § 356 (1981)). New Jersey courts have included in their definition of liquidated damages fixed percentage late fees, default provisions that provide for an increase in loan contract interest rates ("default interest provisions"), and provisions in loan contracts that permit a prepayment premium. See generally id.; Westmark Commercial

---

[1] MOG admits that it ceased making payments, but claims that it did so even earlier, on March 20, 2006. (Doc. No. 16 Attach. 2, Aff. of Dan Hein ¶ 3.) Because the Plaintiff nonetheless maintains in its Reply that the payment was made on May 1, not March 1, and because the Defendant will not be prejudiced if it is credited with two extra payments, the Court finds that MOG made its last payment on May 1, 2006.

Mortgage Fund IV v. Teenform Assocs., 827 A.2d 1154 (N.J. Super. Ct. App. Div. 2003).

Reasonableness under the totality of the circumstances is the touchstone for evaluating liquidated damages clauses. MetLife, 732 A.2d at 499. The validity of a stipulated damages clause is affected by "the difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties." Id. (citation omitted). In determining whether such damages were reasonable in MetLife, the New Jersey Supreme Court considered whether they were intended to compensate administrative costs or other damages and whether they were within the normal industry standard. Id. at 502. Importantly, the MetLife court also noted that "liquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." Id. at 499 (citation omitted).

In this case, the Defendant invokes the New Jersey Supreme Court's holding in MetLife, contending that "there is no proof in the record concerning the actual damages Fleetwood may have allegedly sustained as a result of any late payments, much less whether such charges are 'reasonable' under the circumstances." (Doc. No. 16, Def.'s Mem. in Opp., at 8.) The Defendant fails to recognize, however, that under MetLife, the liquidated damages provisions in the Master Lease are presumptively reasonable because both MOG and Fleetwood are sophisticated parties, and that the burden rests on it to prove that they are unreasonable. MetLife, 732 A.2d at 502-03; see Hewlett-Packard Fin. Servs. Co. v. One2One, LLC, No. 05-4045, 2006 WL 1281335, at * 4-7 (D.N.J. May 8, 2006) (holding that a liquidated damages clause in an equipment finance lease between a financial services company and a small provider of printing services was enforceable, in part because both were sophisticated parties); Choice Canning Co. v. MCST Preferred Transp., Inc., No. L-2119-04, 2006 WL 3511467, at * 3 (N.J. Super. Ct. App. Div. Dec. 7, 2006) (per curiam) (holding that parties were sophisticated when neither was a lay consumer, but one was an "international company that imports and sells

10

shrimp" and the other was "a corporation engaged in the operation of frozen storage facilities"). Because MOG has failed to provide any evidence that the liquidated damages clauses in the Master Lease are unreasonable in light of Fleetwood's anticipated or actual losses or that they are outside the bounds of what constitutes common practice within the industry, the Court cannot conclude that they are unreasonable.

C.     AMOUNT OF DAMAGES

Although the Court finds 1) that there is no issue of material fact as to the commencement date of Schedule No. 5, the number of outstanding payments that are the basis for Fleetwood's calculation of liquidated damages and taxes, and whether MOG was credited for the first and last payment, and 2) that the liquidated damages clauses in the Master Lease are not unreasonable under New Jersey law, it cannot determine based on the record the precise amounts that the Plaintiff is owed. Fleetwood admits that its calculations only reflect the amounts owed as of the date its motion for summary judgment was filed. (Doc. No. 23, Pl.'s Reply, at 8 n.4.) Thus, the Court refers the determination of the appropriate amount of damages to the United States Magistrate Judge for a report and recommendation.

D.     FLEETWOOD'S REQUEST THAT THE COURT SEVER MOG'S CLAIMS AGAINST DICTAPHONE AND DICTAPHONE'S COUNTERCLAIMS AGAINST MOG FROM THIS ACTION

In its Reply to the Defendant's Response to the Plaintiff's summary judgment motion, Fleetwood requests that MOG's third-party claims against Dictaphone and Dictaphone's counterclaims against MOG be severed from this action. In its motion to extend the deadline for taking the Defendant's deposition, however, Fleetwood asserts that MOG and Dictaphone have dropped their claims against each other. (Doc. No. 27, Fleetwood's Mot. to Extend, at 2.) If this

11

is true, Fleetwood's request has been rendered moot. The Court, having received no notice of settlement from either MOG or Dictaphone, orders the parties to inform it of the status of these claims, and if they have been dismissed, to submit an order reflecting that action to the Court.

CONCLUSION

For the reasons articulated herein, the Court **GRANTS** the Plaintiff's motion for summary judgment. The issue of damages is hereby referred to the United States Magistrate Judge for a report and recommendation. Any objections to the magistrate judge's report and recommendation shall be made within ten (10) days after service of the report, setting forth particularly those portions of the report objected to and the reasons for the objections. Failure to timely assign as error a defect in the magistrate judge's report will constitute a waiver of that objection. See Fed. R. Civ. Pro 72(b).

**IT IS SO ORDERED** this 7th day of January, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE